IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:22-cr-0028 |
| DEMONN CHADWICK JENKINS, | ) |
| Defendant. | ) |

**APPEARANCES:**

DELIA L. SMITH, UNITED STATES ATTORNEY
MEREDITH EDWARDS, ASSISTANT UNITED STATES ATTORNEY
UNITED STATES ATTORNEY'S OFFICE
ST. THOMAS, U.S.V.I.
   *FOR THE UNITED STATES OF AMERICA,*

MATTHEW A. CAMPBELL, FEDERAL PUBLIC DEFENDER
OFFICE OF THE FEDERAL PUBLIC DEFENDER
ST. THOMAS, U.S.V.I.
   *FOR DEFENDANT DEMONN CHADWICK JENKINS.*

## MEMORANDUM OPINION

**Robert A. Molloy, Chief Judge.**

**BEFORE THE COURT** is Defendant Demonn Chadwick Jenkins' Motion to Suppress Statements. (ECF No. 29.) The Magistrate Judge issued a Report and Recommendation recommending that the Court deny the motion. (ECF No. 71.) For the reasons stated below, the Court will adopt the Report and Recommendation and deny Jenkins' Motion to Suppress.

### I. FACTUAL BACKGROUND

After a de novo review of the record, including the testimony and exhibits presented at the suppression hearing, the Court agrees with the thorough factual and procedural background as set forth in the Report and Recommendation. The Court therefore adopts the statement of facts in full. The Court will refer to the facts only as necessary to analyze the issue raised in Defendants objections to the Report and Recommendation.

In brief, the Government alleges that, on June 16, 2022, Defendant Demonn Chadwick Jenkins ("Jenkins") used a credit card bearing the name "Corell Bellinger" to purchase high value items from a jewelry store in St. Thomas, Virgin Islands. *See* ECF No 1-1 at 2. On June 17, 2022, law enforcement officials encountered Jenkins and two travel companions, including Chance Campbell ("Campbell") while at the Cyril E. King airport on St. Thomas. Officers initially diverted Jenkins into an area known as "hard secondary" for questioning by HSI Special Agent Chris Ramnes ("SA Ramnes"), and two officers from the Virgin Islands Police Department ("VIPD"), including Sergeant Dwight Griffith ("Sgt. Griffith"). Thereafter, Jenkins was arrested on a complaint charging him with violations of 18 U.S.C. § 1029(a)(5), for fraud and related activity in connection with access devices. *See* ECF No. 1. Officers also interviewed Jenkins subsequent to his arrest, while at the Bureau of Corrections ("BOC").

On July 15, 2022, Jenkins was charged in a two-count Information with Fraudulent use of Access Devices in violation of 18 U.S.C. §§ 1029(a)(5) and (c)(1)(A)(ii), and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). ECF No. 15.[1]

Jenkins filed the instant Motion to Suppress Statements on August 19, 2022, seeking to suppress "any statements purportedly made by him regarding this case." (ECF No. 29.) Jenkins argued that the record does not support the proposition that he validly waived his *Miranda* rights because the Government has failed to provided evidence of the timing or the circumstances of the waiver, thus there is no evidence that *Miranda* warnings were provided prior to either interview. *See id.* at 6-7. Jenkins further argues his statements were the product of coercion. *See id.* at 9-10. Specifically, Jenkins argues that, during the first interview, officers "taunted and mocked Mr. Jenkins, while implying that they had a mountain of evidence against him . . . ." *Id.* at 9. Jenkins further asserts that, during the second interview, officers employed an "equally coercive" technique by implying that they would "advocate on his behalf with the prosecutor" if he cooperated with officers. *Id.* Jenkins further asserts that, as to the first-in-time interrogation, officers continued to interrogate Jenkins after he invoked his right to counsel. *Id.* at 11. Finally, Jenkins argues

---

[1] On April 19, 2023, a Grand Jury returned an indictment charging Jenkins with same. *See* ECF No. 76.

that there is no evidence that Jenkins reinitiated contact with law enforcement after invoking his right to counsel, nor is there evidence of a "knowing, intelligent, and voluntary" waiver of *Miranda* rights prior to the second interview, thus the statements made during that interview must be suppressed.

The government filed its opposition on September 29, 2022. (ECF No. 37.) On September 30, 2022, the Court referred Jenkins' motion to suppress to the Magistrate Judge for a Report and Recommendation. (ECF No. 38.)

The Magistrate Judge conducted an omnibus hearing on the motion on February 14, 2023, and continued proceedings were conducted on March 6, 2023. During the hearings, the Government presented two witnesses: Special Agent Christopher Ramnes ("SA Ramnes") of Homeland Security investigations ("HSI") and Virgin Islands Police Department ("VIPD") Detective Sergeant Dwight Griffith ("Sgt. Griffith"). The Government presented four exhibits: a partial recording of the first-in-time interview, a recording of the second interview, the Statement of Rights form, and Jenkins' criminal history report. Jenkins presented six exhibits: the transcript of the first-in-time interview, a transcript of the second-in-time interview, SA Ramnes' report describing the Jenkins' arrest, SA Ramnes' report summarizing the first-in-time interrogation, SA Ramnes' report summarizing the second-in-time interview, and a transcript of officers' interview with Campbell.[2] The Magistrate Judge admitted all exhibits without objection.

After the hearing, on March 28, 2023, the Magistrate Judge issued a Report and Recommendation in which she found (1) that there is "ample evidence" that officers gave Jenkins his *Miranda* warnings, (2) that Jenkins validly waived his *Miranda* rights during the initial encounter with law enforcement, and that the waiver was uncoerced; (3) that Jenkins reinitiated contact with law enforcement after invoking his *Miranda* rights, and again validly waived his *Miranda* prior to the second interview; and (4) that Jenkins' statements were made voluntarily, knowingly, and intentionally. *See* ECF No. 71 at 10-17. The Magistrate Judge also acknowledged that Sgt. Griffith continued to speak with Jenkins after Jenkins invoked his right to counsel, however she found that "neither Sgt. Griffith's

---

[2] Jenkins offered the transcript of Campbell's interview solely for impeachment purposes.

tone nor the content of his comments amounted to coercion or pressure sufficient to call the validity of the waiver into question." *Id.* at 12. The Magistrate Judge noted, however, that the Government has stated it "will not use any portion of the statement made at the airport following Jenkins' invocation of his right to counsel." *Id.* Based on these findings, the Magistrate Judge recommended that the Court deny the Motion to Suppress. *See id.* at 17.

On May 8, 2023, [3] Jenkins filed his objections to the Report and Recommendation. (ECF No. 81.) Jenkins first acknowledges that SA Ramnes testified that Jenkins was read his *Miranda* rights and waived those rights prior to the first interview. However, Jenkins argues that neither SA Ramnes nor Sgt. Griffith were credible witnesses and, as a result, the Court should not credit their testimony. *See id.* at 2-11. Jenkins argues that the facts do not support the conclusion that Jenkins waived his *Miranda* rights. *See id.* at 2-11. Jenkins further argues that the Government did not sufficiently prove that Jenkins freely and voluntarily reinitiated contact with law enforcement after invoking his *Miranda* rights. *See id.* a 11-13. Finally, Jenkins argues that the record does not support the finding that any waiver or subsequent statements were knowing, voluntary, and intelligently made. *See id.* at 5.[4]

## II. LEGAL STANDARD

Litigants may make "specific written objections" to a magistrate judge's report and recommendation "[w]ithin 14 days after being served with a copy of the recommended disposition." See Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1) ("Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court."). When a party is served by mail pursuant to Fed. R. Civ. P. 5(b)(2)(C) ("A paper is served under this rule by . . . mailing it to the person's last known address—in which event service is complete upon

---

[3] Jenkins filed an unopposed Motion for Extension of Time to file Objections to Report and Recommendation on April 3, 2023, requesting a 30-day extension of time to file objections. *See* ECF No. 73. Jenkins argued that additional time was necessary to obtain transcript of the hearing for use in his objections. *See id.* at 2. The Government did not oppose the motion. *Id.* The Court will grant the motion, *nunc pro tunc.*
[4] The Government filed its reply on March 23, 2023. (ECF No. 86.)

mailing"), the 14-day time period within which a party may object to a magistrate judge's report and recommendation is extended to 17 days. See Fed. R. Civ. P. 6(d) ("When a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)."); see *also Pearson v. Prison Health Serv.*, 519 F. App'x 79, 81 (3d Cir. 2013) (explaining that when a party is served with a report and recommendation by mail, the period to file objections is 17 days). The time within which a party may make objections may be extended by the Court upon a timely motion for an extension of time demonstrating good cause for the extension. See Fed. R. Civ. P. 6(b)(1) ("When an act may or must be done within a specified time, the court may, for good cause, extend that time . . . if a request is made, before the original time . . . expires.").

When a magistrate judge issues a report and recommendation, the Court is required to review de novo only those portions of the report and recommendation to which a party has objected. See Fed. R. Civ. P. 72(b)(3). When no objection to a magistrate's report and recommendation is made, or such an objection is untimely, the district court reviews the report and recommendation for plain error. See *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987) ("While . . . [28 U.S.C. § 636(b)(1)] may not require, in the absence of objections, the district court to review the magistrate's report before accepting it, we believe that the better practice is for the district judge to afford some level of review to dispositive legal issues raised by the report."); see also *Tice v. Wilson*, 425 F. Supp. 2d 676, 680 (W.D. Pa. 2006) aff'd, 276 Fed. App'x 125 (3d Cir. 2008) (explaining that, by failing to object to a portion of a report and recommendation, the litigant "waived its right to have this Court conduct a de novo review," and that in those circumstances, "the scope of [the court's] review is far more limited and is conducted under the far more deferential standard of 'plain error' ").

### III. DISCUSSION

a. Whether the Witnesses were Credible

Jenkins first objects to the Magistrate Judge's implicit finding that SA Ramnes was a credible witness. In support, Jenkins points to SA Ramnes' failure to record the beginning of

the first interrogation and corresponding failure to capture reading of the *Miranda* warnings and Jenkins' waiver thereof, and to SA Ramnes' failure to document the time that Jenkins signed the waiver. *See* ECF No. 81 at 2-5. Jenkins further asserts that SA Ramnes did not document the signing of the *Miranda* waiver in his reports.[5] *See id.* at 5. Additionally, Jenkins argues that it is unlikely that SA Ramnes' questions during the unrecorded portion of the interview were truly limited to asking Jenkins to "tell[] his story." *See id.* at 3. Finally, Jenkins claims that SA Ramnes' reports were incomplete and misleading, because SA Ramnes' reports did not mention that Sgt. Griffith asked Jenkins additional questions after he invoked his right to counsel during the first interview, and that this failure indicates that SA Ramnes sought to "cover up" the constitutional violation. *See id.* at 15.

Likewise, Jenkins argues that Sgt. Griffith was not a credible witness, noting that Sgt. Griffith did not document his interactions with Jenkins, that Sgt. Griffith continued to question Jenkins for after he invoked his right to counsel, and arguing that Sgt. Griffith had "selective hearing" and "memory deficits." *See id.* at 5-11.

"Our judicial system affords deference to the finder of fact who hears the live testimony of witnesses because of the opportunity to judge the credibility of those witnesses." *Hill v. Beyer*, 62 F.3d 474, 482 (3d Cir. 1995) (citing *United States v. Raddatz*, 447 U.S. 667, 681 n.7 (1980)); *United States v. Kole*, 164 F.3d 164, 177 (3d Cir. 1998) ("Credibility determinations are the unique province of a fact finder[.]"). It is well recognized within the Third Circuit that a district judge may not reject a magistrate judge's credibility determination without conducting a *de novo* hearing. *Hill*, 62 F.3d at 482; *Boyd v. Waymart*, 579 F.3d 330, 333 (3d Cir. 2009) ("[W]e conclude the District Court improperly rejected—on a cold record—the Magistrate Judge's finding."). A district judge may, however, accept a magistrate judge's recommendation regarding witness credibility without conducting a *de novo* hearing. *See Raddatz*, 447 U.S. 667, 675-682 (1980).

---

[5] SA Ramnes documented that Jenkins was informed of and subsequently waived his *Miranda* rights in all three reports, which were offered at the hearing as exhibits by Jenkins and admitted without objection. *See* ECF Nos. 81-2 at 3, 81-3 at 2, 81-4 at 2.

*United States v. Jenkins*
Case No. 3:22-cr-0028
Memorandum Opinion
Page 7 of 13

Based on her observations of SA Ramnes and Sgt. Griffith during the evidentiary hearing, the Magistrate Judge impliedly found that both witnesses were credible. The Court finds no reason to depart from the Magistrate Judge's assessment of the witnesses' testimony. Upon *de novo* review, it is clear from the hearing transcripts that the issues raised by Jenkins in his objection as to witness credibility were explored at length during the hearing, and therefore, that the Magistrate Judge was aware of these facts when she chose to credit the witnesses' testimonies. Furthermore, the Court has reviewed the exhibits presented by the parties, including SA Ramnes' reports and the transcripts of the interviews, and the Court finds that both SA Ramnes' and Sgt. Griffith's testimonies are consistent with the record. Giving the proper deference to the Magistrate Judge's personal observations and having examined the available evidence, the Court finds that the Magistrate Judge properly credited SA Ramnes' and Sgt. Griffith testimonies. Accordingly, Jenkins' objections as to the SA Ramnes' and Sgt. Griffith's credibility are overruled.

**b. Whether there was a valid *Miranda* waiver**

To safeguard an individual's Fifth Amendment privilege against self-incrimination, the Supreme Court has held that the government may not introduce statements made by an individual who is subject to "custodial interrogation" unless he first has been given his *Miranda* warnings. *Miranda v. Arizona*, 384 U.S. 436, 445 (1966). However, a suspect may waive these rights, "provided the waiver is made voluntarily, knowingly and intelligently." *United States v. Velasquez*, 885 F.2d 1076, 1084 (3d Cir. 1989) (quoting *Miranda,* 384 U.S. at 444). A waiver is voluntary, knowing, and intelligent where is its "the product of a free and deliberate choice rather than intimidation, coercion or deception" and is made "with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v. Velasquez*, 885 F.2d 1076, 1084 (3d Cir. 1989).

The parties do not dispute that Jenkins was the subject of a custodial interrogation, and that *Miranda* warnings were required. Thus, without a valid *Miranda* waiver, Jenkins' statements are inadmissible.

    i.    *First-in-Time Interview*

Jenkins objects to the Magistrate Judge's conclusion that SA Ramnes gave Jenkins his *Miranda* rights, and that Jenkins validly waived those rights prior to both the first-in-time interview. *See* ECF No. 81 at 2-5. Jenkins additionally asserts that the Magistrate Judge did not "answer with factual evidence the critical question of **when** the rights were read and **when** the waiver was signed." *Id.* at 4 (emphasis in original). In support, Jenkins argues that the Magistrate Judge's conclusion rests on the testimonies of SA Ramnes and Sgt. Griffith, as well as the statement of rights form admitted into evidence, none of which are credible. *Id.* at 5.

"Whenever the [Government] bears the burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of our *Miranda* doctrine, the [Government] need prove waiver only by a preponderance of the evidence." *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). While a written waiver is "strong proof" of validity, "a writing is neither necessary nor sufficient to sustain the Government's burden . . . ." *United States v. Burnett*, Criminal Action Nos. 110274-01, 2013 U.S. Dist. LEXIS 94493 at *15 (E.D. Pa. July 8, 2023) (citing *North Carolina v. Butler*, 441 U.S. 369, (1979)). "Officer testimony that demonstrates that a suspect was properly advised of his rights and that a proper waiver was obtained, when credible, can be sufficient on its own; no physical form or signature need be produced." *United States v. Perkins*, Criminal Action No. 19-cr-269-7, 2022 U.S. Dist. LEXIS 29368, *10-11 (E.D. Pa. Feb. 18, 2022) (citing *United States v. Almonte*, 348 F. Supp. 3d 402, 408 (E.D. Pa. 2018)); *see e.g. United States v. Harris*, Crim. No. 08-058-SLR, 2008 U.S. Dist. LEXIS 102976, at *11 (D. De. Dec. 22, 2008) (finding that a valid *Miranda* waiver existed based on credible testimony of two witnesses); *United States v. Kelly*, No. 1:14-cr-00070, 2015 U.S. Dist. LEXIS 117519, *8 (M.D. Pa. Sept. 3, 2015) (finding that the defendant validly waived his *Miranda* based on officer testimony).

As explained in the Report and Recommendation, both SA Ramnes and Sgt. Griffith testified that SA Ramnes read the *Miranda* rights out loud to Jenkins and provided him with a statement of rights form *See* ECF No. 71 at 10-11. The statement of rights form entered into evidence contains the signatures of Jenkins and Sgt. Griffith. *See* ECF No. 81-9. Furthermore, at the hearing, both SA Ramnes and Sgt. Griffith specifically testified that

Jenkins was read his *Miranda* rights prior to the first-in-time interview. *See* ECF No. 81-7 at 16, 81-8 at 8. SA Ramnes also testified that Jenkins appeared to understand the rights being waived, and that Jenkins verbally affirmed this understanding. *See* ECF No. 81-7 at 18. SA Ramnes further stated that the interaction was a "pleasant conversation." *Id.* 9

As to the first-in-time interview, the Magistrate Judge found that there was "ample evidence" that Jenkins received his *Miranda* warnings. ECF No. 71 at 10. The Court agrees with this conclusion. The Court credits SA Ramnes' and Sgt. Griffith's testimony that Jenkins was read his rights, that he agreed to waive his *Miranda* rights by both verbally and in writing. The Court further credits SA Ramnes' testimony regarding the nature of the interaction and finds that there is no evidence of physical or mental coercion. Finally, the Court notes that Jenkins has had several encounters with law enforcement prior to the instant matter and understood the import of the *Miranda* warnings as a result. No party asserts that Jenkins was incapable of waiving his *Miranda* rights assuming that they were provided. Considering the totality of the circumstances, the Court finds that Jenkins was read his *Miranda* warnings and that he waived those rights knowingly and intelligently. Thus, notwithstanding the failure to document the precise time of signing, the Court will overrule any objections to the Magistrate Judge's finding that Jenkins was properly Mirandized prior to the first in time interview.[6]

*ii. Second-in-Time Interview*

Jenkins next objects to the Magistrate Judge's finding that he freely and voluntarily reinitiated interactions with law enforcement after having invoked his *Miranda* rights during the first interview. *See* ECF No. 81 at 7-11.

Once a suspect invokes his Fifth Amendment right to remain silent, police questioning must cease. *Michigan v. Mosley*, 423 U.S. 96, 104 (1975). Thereafter, the suspect "is not subject to further interrogation . . . until counsel has been made available to him,

---

[6] As noted in the Report and Recommendation, Sgt. Griffith continued to speak with Jenkins after he invoked his *Miranda* rights during the first-in-time interview. The Court agrees with the Magistrate Judge's conclusion that this post-invocation questioning does not invalidate the *Miranda* waiver taken prior to the beginning of the interview. Furthermore, the Government has repeatedly stated that it will not seek to admit any post-invocation statements made at the airport. *See* ECF No. 37 at n.2, ECF No. 81-8 at 62.

unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981). Officers may resume questioning only where two factors are satisfied: (1) "the suspect must initiate the conversation with the authorities," and (2) "after the suspect initiates the conversation, the waiver of the right to counsel and the right to silence must be knowing and voluntary." *United States v. Velasquez*, 885 F.2d 1076, 1084 (3d Cir. 1989) (citing *Oregon v. Bradshaw*, 462 U.S. 1039, 1045-46, (1983)).

A suspect may initiate further communication when he "evince[s] a willingness and a desire for a generalized discussion about the investigation." *Bradshaw*, 462 U.S. at 1045-46 (finding that a suspect reinitiated communication when he asked officers "Well, what is going to happen to me now?"); *see e.g. Velazquez*, 885 F.2d at 1076 ("What is going to happen?"); *United States v. Floyd*, No. 95–50047, 1996 U.S. App. LEXIS 3578 (9th Cir. Feb. 12, 1996) ("How'd you guys come onto me?"). Conversely, there is no "initiation" on a covered topic if the suspect is responding to "words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect" concerning the covered topic. *United States v. Rought*, 11 F.4th 178, 189 (3d. Cir. 2021). Furthermore, "bare inquiries" such as "a request for a drink of water or a request to use a telephone" are "so routine that they cannot be fairly said to represent a desire on the part of an accused to open up a more generalized discussion relating directly or indirectly to the investigation." *Bradshaw*, 462 U.S. at 1045.

Sgt. Griffith testified that once they arrived at the jail, he only asked Jenkins "normal processing questions." (ECF No. 81-8 at 13.) Sgt. Griffith further testified that Jenkins asked him "why he was the only one being arrested?" *Id.* at 14. Sgt. Griffith asserted that he informed Jenkins that only SA Ramnes could answer his question. *See id.* Sgt. Griffith then testified that he subsequently contacted SA Ramnes. *See id.* Sgt. Griffith stated that he did not have any further discussion with Jenkins after contacting SA Ramnes. *Id.*

SA Ramnes testified that he did not have any substantive interaction with Jenkins between the time that he arrived at the jail and the time that the second-in-time interview

commenced. *See* ECF No. 81-7 at 27-28. The transcript of the second-in-time interview begins as follows:

> AGENT RAMNES: It's important that I reestablish that you don't have to speak to us. You were read your Miranda Rights and you called and asked to speak to us again. Is that correct?
>
> DEMONN JENKINS: Yes, Sir.
>
> AGENT RAMNES: Okay. So what is it that you wanted to say? What is it that you wanted to make sure that we understand?
>
> DEMONN JENKINS: No. I'm just trying to get an understanding because basically what I'm hearing here—basically what I'm seeing here is I'm being charged with everything.

(ECF No. 81-1 at 1.)

Based on the record, the Court concludes that Jenkins reinitiated contact with authorities after he invoked his *Miranda* rights. Jenkins' question to Sgt. Griffith is far more than a bare inquiry and reflects a desire to discuss the case more generally. Further, the Court need not go far to determine Jenkins' intent. At the outset of the interview, Jenkins, himself, confirms that he asked to speak to SA Ramnes again to "try to get an understanding" of the charges against him. This inquiry necessarily involves a more generalized conversation regarding the case. Thus, the Court concludes that Jenkins reinitiated contact with SA Ramnes after having invoked his *Miranda* rights.

The Court further finds that Jenkins knowingly and voluntarily waived his *Miranda* rights after reinitiating questioning. Again, the Court looks to the transcript of the interview, in which Jenkins affirmatively responds to SA Ramnes' statements confirming that Jenkins was aware of his right to not speak with the police. The Court further notes that the recording of the second-in-time interrogation seemed calm and conversational, and that there is no indication of coercion preceding the warnings. Thus, the Court concludes that the totality of the circumstances show that Jenkins second *Miranda* waiver was knowing and voluntary.

Because Jenkins initiated further questioning with officers that evinced a desire for generalized discussion and subsequently knowingly and voluntarily waived his *Miranda*

rights, the Court finds that Jenkins validly waived his *Miranda* rights while at the jail prior to the second-in-time interview. Accordingly, Jenkins objections as to the second waiver are overruled.

### c. Whether Jenkins' Statements Were Voluntary

Finally, Jenkins argues that his statements were not knowingly and voluntarily made. He reincorporates all abovementioned arguments regarding witness credibility and the *Miranda* waivers. Jenkins further argues that, while there is no evidence of physical coercion, SA Ramnes provided Jenkins with "legal advice" by indicated that Jenkins "would be in a better legal position if he confessed to what occurred." ECF No. 81 and 18. Jenkins further asserts that SA Ramnes' later statements asserting that he knew what Jenkins had done "put the lie to his earlier representations to Mr. Jenkins that he could legally help himself by answering questions." *Id.*

Irrespective of a valid *Miranda* waiver, "[t]he Self–Incrimination Clause of the Fifth Amendment guarantees that no person 'shall be compelled in any criminal case to be a witness against himself.'" *Withrow v. Williams*, 507 U.S. 680, 688 (1993) (quoting U.S. Const., amend. V). This protection bars the introduction of statements to law enforcement that are not "voluntary." *Id.* A statement is voluntary only when the speaker's "will was not overborne," and the statement was the "product of an essentially free and unconstrained choice by its maker, that was the product of a rational intellect and a free will." *United States v. Swint*, 15 F.3d 286, 289 (3d Cir. 1994) (internal quotation marks omitted).

"[C]ourts look to the totality of circumstances to determine whether a confession was voluntary." *Withrow*, 507 U.S. at 693. Potential circumstances affecting the voluntariness of statements made include: (1) the length and location of the interrogation; (2) the defendant's maturity, physical condition, mental health and level of education; and (3) whether *Miranda* warnings were given. *Swint*, 15 F.3d at 289. "*[T]he* crucial element" of the inquiry, however, is "police coercion." *Withrow*, 507 U.S. at 693 (emphasis added). "Unless there is 'police conduct causally related to the confession,' a confession is considered voluntary. Thus, a court will not hold that a confession was involuntary unless it finds that it was the product of 'police overreaching.'" *Swint*, 15 F.3d at 289 (citations

omitted) (quoting *Connelly,* 479 U.S. at 164); *see also United States v. Flemmi*, 225 F.3d 78, 91 (1st Cir. 2000) ("[T]he Supreme Court has confined the voluntariness concept by holding that only statements procured by coercive official tactics should be excluded as involuntary." (original alterations and internal quotation marks omitted)).

As an initial matter, the Court notes that all arguments asserted as to the voluntariness of the statements made during the first-in-time interview were addressed above. The Court has determined that Jenkins validly waived his *Miranda* rights while at the airport. The Court again credits the SA Ramnes' and Sgt. Griffith's testimony that they did not use any coercive tactics prior to the recording. Jenkins does not assert that the length or the location of the initial interview would undercut the voluntariness of the statements made during that time. The Court further observes that the recording reflected a calm and conversational interrogation with no indication of physical or psychological coercion. Therefore, the Court concludes that the statements made during the first-in-time interview were knowingly, voluntarily, and intelligently made.

## IV. CONCLUSION

For the reasons stated herein, Jenkins' objections to the Magistrate Judge's Report and Recommendation are overruled. The Court adopts the Report and Recommendation in full and denies Jenkins' Motion to Suppress.

An appropriate Order follows.

**Dated:** September 27, 2023            */s/ Robert A. Molloy*
                                                          **ROBERT A. MOLLOY**
                                                          **Chief Judge**